[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This appeal stems from a combination magistrate's decision and trial court order, which was time-stamped on August 17, 2001, awarding custody of the parties' children to appellee, Allan D. Faulhaber.
On September 27, 1991, the parties were married. Two children, Ryan and Matthew, were born as issue of the marriage, in 1992 and 1995 respectively.
On September 14, 1999, the parties' marriage was dissolved. The court named appellant the residential parent and sole legal custodian of Ryan and Matthew, and awarded appellee the court's standard visitation order.
On July 19, 2000, appellee moved the court to reallocate the parental rights and responsibilities due to changes in appellant's life, including her involvement and cohabitation with a convicted sex offender named Pia Velena Carrington, n.k.a. Djata Samad ("Samad").
On April 26, 2001, appellee filed an ex parte motion for emergency custody. The same day, the court granted appellee's motion without a hearing and awarded him temporary custody of the children, in light of Samad's criminal background.
On May 2, 2001, a hearing on the initial motion for reallocation of parental rights and responsibilities was held before a magistrate. At the hearing, appellant testified that she had met Samad in an Internet chat room while still married and that Samad had initially claimed to be a male. Appellant also acknowledged that she had legally changed her name and converted to Samad's religion, Islam, and that Samad had been living with her and her children, in Ohio, since April of 2000.
Appellee presented evidence showing that, in 1996, Samad was convicted of one count of felony infliction of corporal injury on a co-habitant, one count of felony sexual assault — involving penetration — against a co-habitant, and one count of misdemeanor stalking. Samad was sentenced to three hundred days in jail, of which she served approximately three months, and a five-year probation term, which was terminated early. She also testified that she was convicted of misdemeanor vandalism in 1995.
Helen Kravetz, LISW ("Kravetz"), a Portage County Investigator appointed by the court to evaluate the parties and make a recommendation as to custody, testified that the court should award custody of Ryan and Matthew to appellee. She testified that the children were far more comfortable at appellee's home than appellant's, and stated that the atmosphere in appellant's home had created "confusion, uncertainty and fear" in the lives of the children.
The guardian ad litem for the children, Mark Fankhauser ("Fankhauser"), also testified that appellee should be given custody of the children. While Fankhauser acknowledged that the children were doing fairly well in school, he was concerned about the cumulative changes in appellant's life. Fankhauser was especially concerned about Samad's criminal background.
Dr. James Frye, a court-appointed psychologist, submitted a recommendation that the children remain with appellant on the basis that he did not perceive a change in circumstances sufficient to warrant a change of custody. Dr. Frye was not informed, however, of Samad's criminal history.
Appellee testified on cross-examination that, approximately ten years ago, he placed an advertisement in Ohio Connection Magazine, under the name "Allan Silver," for the purpose of directing a pornographic film. While appellee never actually made a pornographic film, he did maintain a P.O. box for approximately six months, where potential "actors and actresses" could submit their applications.
On May 3, 2001, the magistrate issued his interim order wherein he stated that: (1) appellee shall continue to be the interim parent and sole legal custodian; (2) the children shall finish the school year at Longcoy Elementary School; and, (3) appellant shall have the court's standard order of visitation. Appellant filed objections to the magistrate's interim order, which, after a hearing, the trial court denied.
On May 18, 2001, appellee filed a motion for permanent change of custody and for supervised visitation. In this motion, appellee again moved for permanent custody and also requested that visitation between appellant and the two children only "take place in a safe environment and out of the presence of Ms. Samad."
On May 21, 2001, the magistrate issued his final decision, recommending that appellee be designated the residential parent and sole legal guardian. The magistrate recommended that appellant be awarded standard visitation rights, but stipulated that the children should never be left alone and unattended with Samad.
On June 4, 2001, appellant filed an "Objection to the decision of the Magistrate of May 2, 2001."[1] A hearing was held before the trial court, on July 30, 2001.
On August 8, 2001, the trial court overruled appellant's objections, adopted the magistrate's decision, and ordered appellee's counsel to prepare a judgment entry consistent therewith. On August 17, 2001, said judgment, which was signed by the magistrate and the trial court judge, was filed.[2] In its August 17, 2001 decision, the trial court granted sole legal custody of Ryan and Matthew to appellee and held that appellant will have, at a minimum, the court's standard visitation. The trial court also stipulated that the minor children should never be left alone and unattended with Samad. From this judgment, appellant raises the following assignment of error:
 "The judgment of the Trial Court is against the manifest weight of the evidence."
Appellant argues that a significant change in circumstances has not occurred and that the trial court erred in determining that a change in custody was in the best interest of the children. Therefore, appellant argues, the trial court abused its discretion in changing custody.
Appellee argues that the trial court's judgment is supported by competent and credible evidence.
A trial court has broad discretion in its allocation of parental rights and responsibilities. Donovan v. Donovan (1996), 110 Ohio App.3d 615,618. Thus, the judgment of the trial court in its allocation of parental rights and responsibilities will not be reversed absent an abuse of discretion. Id. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
In determining whether a trial court's award of custody is against the manifest weight of the evidence, an appellate court conducts the same manifest weight analysis applied in criminal appeals. See e.g.,Scarbrough v. Scarbrough (July 18, 2001), 9th Dist. No. 00CA007743, 2001 Ohio App. LEXIS 3195. Thus, "[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. "Every reasonable presumption must be made in favor of the judgment and the findings of facts [by the trial court]." Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19.
R.C. 3109.04 governs the allocation of parental rights and responsibilities. Pursuant to the statute, before a trial court may modify a prior child custody decree, the party requesting the modification must demonstrate: (1) a change in circumstances; (2) the modification is in the best interest of the child; and, (3) one of the conditions set forth in R.C. 3109.04(E)(1)(a)(i-iiii). Hongosh v.Hongosh (Sept. 11, 1998), 11th Dist. Nos. 97-L-113 and 97-L-263, 1998 Ohio App. LEXIS 4249, at *14.
In this case, the trial court found that a change in circumstances had occurred due to the appellant changing her name and religion, and taking up residence with a convicted sex offender. Appellant argues that these changes do not constitute a change in circumstances.
Upon review of the record, we conclude that the trial court's finding that a change in circumstances did occur is supported by competent and credible evidence. Both the county investigator and the guardian ad litem conducted thorough investigations and concluded that a change in circumstances had occurred.
In her brief, appellant relies heavily on the court psychologist's recommendation that a change in circumstances did not occur. Dr. Frye made his recommendation, however, without the knowledge that appellant's new roommate and partner, with whom she intends to spend the rest of her life, is a convicted sex offender who has served time in jail. In light of Dr. Frye's unawareness of all of the relevant facts of this case, his recommendation does not weigh very heavily in favor of appellant.
Likewise, review of the record reveals that appellee demonstrated that a modification of the parental rights and responsibilities was in the best interest of the children. In determining the best interest of a child on motion for modification of a decree allocating parental rights and responsibilities, the court shall consider all the relevant factors, including, but not limited to those set forth in R.C. 3109.04(F)(1)(a-j).In light of the evidence presented, we conclude that the trial court did have competent and credible evidence to determine that a modification of parental rights and responsibilities was in the best interest of the children. Kravetz stated in her report that appellant was preventing the children "from being open, honest and free to express happenings in their environment" out of a desire to keep her religion and life with Samad private, whereas appellee appeared to have "a healthy relationship" with his sons.
Furthermore, Fankhauser testified that a modification of parental rights was in the best interest of the children. He stated that his interviews with the children revealed that appellant's lifestyle changes were "upsetting" to them. Fankhauser was most troubled, however, by the fact that appellant knew that Samad had a criminal record, but did not look into it before inviting Samad, whom she had met on the Internet, to move in with her and her two minor children.
Fankhauser acknowledged that the children seemed to be doing fairly well in school and getting along with Samad. In his opinion, however, Samad's record of sexual assault, appellant's lack of concern about that record, and the many other changes in appellant's life all overrode the fact that the two children were doing fairly well in school.
Appellant further contends that the court violated her 14th Amendment right to Equal Protection by taking into account her sexual orientation.[3] A court may take into account a parent's sexual orientation in determining custody issues. Roberts v. Roberts (1985),22 Ohio App.3d 127. While homosexuality does not constitute unfitness per se, a court may evaluate the impact that a parent's sexual orientation has on minor children. Conkel v. Conkel (1987), 31 Ohio App.3d 169,172-173, citing Roberts.
There is no evidence that the trial court considered the issue of sexual orientation to be determinative. Instead, it considered the effect of appellant's sexual orientation in relation to her children as only one factor in the totality of the circumstances. The court determined that appellant's sudden change in sexual orientation and decision to co-habitate with a convicted sex offender had contributed to appellant becoming "systematically isolated from the outside world," including her own parents. The court further determined that appellant's isolation was adversely affecting Ryan and Matthew. Such a determination is not a violation of appellant's constitutional rights.
Finally, the court decided that, in accordance with R.C.3109.04(E)(1)(a)(iiii), the benefits of a reallocation of parental rights and responsibilities outweighed the harm likely to be caused by a change of environment. While appellant presented evidence demonstrating that the minor children were doing well in school and getting along with Samad, the trial court's judgment is not against the weight of the evidence. The fact remains that appellant has undergone many changes in her life and is currently living with a convicted sex offender.
Therefore, weighing the evidence and all reasonable inferences, we cannot conclude that the trial court clearly lost its way or created such a manifest miscarriage of justice that the judgment must be reversed.
Appellant's sole assignment of error is without merit. The trial court did not abuse its discretion in reallocating the parental rights and responsibilities.
Based on the foregoing, the judgment of the Portage County Court of Common Pleas is hereby affirmed.
DONALD R. FORD, P.J., DIANE V. GRENDELL, J., concurs.
[1] Appellant's objections were actually to the magistrate's decision filed on May 21, 2001.
[2] It is unclear why the magistrate signed the judgment entry, since it was the trial court's adoption of the magistrate's May 21, 2001 decision, pursuant to Civ.R. 53(E).
[3] Appellant merely states in her brief that her constitutional rights were violated, but does not provide an argument to support her position.